HALLOCK et al. v. DAVISON et al.

(Circuit Court, N. D. New York. March 19, 1901.)

No. 6,818.

1. PATENTS—VALIDITY—EVIDENCE TO SUSTAIN.

The presumption in favor of the validity of a patent arising from its issuance is re-inforced by the facts that the patented machine was the first among many designed for the same purpose to accomplish successfully that purpose, and that it has been copied admittedly by defendants.

2. SAME—INVENTION—WEEDING MACHINES.

The Hallock patent, No. 600,782, for a weeding machine, the essential feature of which is a tooth of a new and distinctive construction, designed to give it strength and stiffness laterally and flexibility in the direction of its movement, was not anticipated, nor the device suggested, by anything in the prior art; and in view of the great superiority of the machine over the many previously constructed, as evidenced by its immediate acceptance by users and large sale, must be conceded to disclose patentable invention, and not merely the exercise of mechanical skill. Claims 1 and 3 also *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

This is an equity suit in the usual form, seeking an injunction and accounting for an infringement of letters patent, No. 600,782, for improvements in weeding machines, granted to the complainants March 15, 1898. The weeder of the patent consists of a frame supported about 20 inches above the ground by flexible and elastic teeth secured to the frame at the upper end and with their lower ends resting upon the ground. The frame is provided with guide handles and is intended to be drawn by a horse. The upper portion of the tooth is flat and the lower portion, which does the weeding, is round in cross-section. The teeth are bowed rearwardly and have a slight rearward trail to prevent them from digging into the ground and to enable them to crush small lumps and permit the operator readily to remove rubbish which may have collected around the teeth. The rearward trail is not sufficient to interfere with the fore and aft vibration of the teeth which are sufficiently flexible when they strike a plant to pass around it without doing injury. When in operation the teeth are given a delicate, tremulous vibration, analogous to the motion of the human hand when engaged in weeding. In the specification the patentees assert that machines of the class to which their weeder belongs have been in use for many years and that it has been demonstrated that the teeth thereof must be small and round in section and long and flexible so that when in use they will not dig deeply into the soil or injure the young plants which are being cultivated. The lower parts of the teeth are preferably, substantially, straight and so arranged that they incline rearwardly somewhat, in order that they shall trail upon rather than dig into the soil. No form of tooth which lacks any one of these features has been found to operate satisfactorily and these characteristics are said to differentiate this class of machines from harrows and cultivators, whose primary object is to break up and turn over the soil and which only operate between the rows of a growing crop. The weeder operates not only between the rows of plants but also in the rows. The frame of a weeder must be high enough above the ground to pass over a crop and for that reason great difficulty is experienced with the teeth because if they are made small enough to work well they lack in strength and break or bend permanently, whereas if made sufficiently strong to avoid these objections they are too large and stiff to operate well as weeders.

The specification says further: "Our invention consists of a novel form of weeder tooth which possesses all of the advantageous characteristics and requirements of the weeder tooth or finger as heretofore developed and at the same time possesses advantageous features not heretofore attained and which will be presently pointed out. * * * In the drawings, A represents the

weeder tooth or finger as a whole. It consists of two parts, the lower, a, of which is small and round in cross-section substantially straight, and inclined to the rear and is intended to operate upon the soil and among the plants, and the upper part, a', which is flat and thin, to give flexibility and at the same time the necessary strength. * * * The tooth thus formed is found to work admirably as a weeder, having the flexibility and elasticity required and by reason of the shape of the lower part not tending to injure the plants being worked, while it has sufficient strength to support the frame of the machine and is. not liable to break or become permanently bent while in.'use. * * * The teeth are preferably so arranged upon the frame that they are equal distances apart transversely of the machine."

The patent contains six claims only two of which, however, are involved, namely, the first and the third. They are as follows: "(1) A flexible tooth for a weeder having a substantially straight, trailing lower end portion, substantially round in cross-section, and small in size, adapted to engage with the soil, and a flat spring yielding upper portion adapted to be secured to the frame of the machine, substantially as and for the purposes hereinbefore set forth." "(3) The combination with the frame, of the teeth supported thereby, each tooth being adapted to rest upon the ground and thereby support the frame, and constructed to have a small round substantially straight and rearwardly-inclined lower portion, a, and a flat spring yielding upper portion, a', which is secured to the frame, substantially as set forth."

Infringement is not disputed, the only defenses being lack of novelty and invention.

Marcellus Bailey, for complainants.
Richard R. Martin, for defendants.

COXE, District Judge (after stating the facts). The proof establishes without contradiction that the complainants' weeder is an exceedingly popular and successful implement. Indeed, it seems to be the only entirely satisfactory weeder ever produced, although the attempt to make such a tool has extended over a period of 15 years. The defendants have themselves contributed to the cogent testimony establishing the excellence of the weeder by copying it in every essential detail. This being the general situation the court is naturally disinclined to relax the rule which makes the patent prima facie evidence of its validity and casts the burden of showing the contrary upon the defendants. Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017. Unquestionably the best reference is the patent granted over half a century ago to Charles Carlisle for a horse rake. To this proposition all agree. It is not pretended that this patent is an anticipation, but it is argued with force and ingenuity that it required no exercise of the inventive faculty to place the Carlisle tooth upon a weeding machine. It is asserted, erroneously it is thought, that the complainants have done nothing more. The Carlisle rake seems to be an exceedingly clumsy and inoperative machine. There is no proof that it was ever used and it is not easy to see how it could be used to accomplish any useful purpose. The specification says:

"The rake-head or cross-beam G supports and carries the rake-teeth. They consist of a series of bent springs, O O, etc., each of which is firmly secured to it, as seen in Figs. 2 and 3, the latter representing a vertical and central section of the cross-beam and one of the springs and its socket, and a wooden tooth inserted in it. Each of said sockets is intended to receive and support a rake-tooth, c, made of wood or other proper material, which is properly shaped and driven firmly into the socket or tube, and when worn out or in-

jured may be removed and have a new one substituted in its place.  * * * When a piece of ground is to be raked over the attendant applies his hands to the handles of the rake-head and forces them and the head down, so as to cause the rake-points to enter the soil. The manner in which the rake-head is supported and connected to the axle-tree enables the attendant to govern its vertical movements without their being subjected to any influence arising from any elevations or depressions over which the wheels in advance may be passing."

The pronounced rearward slant of the spring arms, the wooden pegs, the normal condition of the teeth above the ground and not resting thereon and the wide distance between the teeth, absolutely preclude the idea that any rational being would ever think of using the Carlisle machine for weeding. It is easy for an expert with the patented structure before him to suggest analogies in the prior art. The question, however, is whether the prior art would suggest the patented structure to a skilled mechanic. To be more specific, would the Carlisle rake suggest the Hallock weeder? It is thought not. As matter of fact no one ever did place the Carlisle tooth upon a weeder. But let it be assumed that the idea might have occurred to a mechanic; he then would have been as far as ever from producing a successful weeder. The Carlisle tooth without radical changes in structure and slant would have failed to accomplish the purpose in view. The desideratum was to secure a tooth having an elastic "sensitive, tremulous, vibratory" dancing movement and sufficiently stiff to prevent lateral deflection known as "bunching" or "tracking." The lack of these characteristics made the prior weeders failures. Farmers and inventors alike understood these defects and endeavored to correct them, but always upon the same general lines, and always without success, until the complainants discovered the simple but effective tooth of the patent, and the problem was solved. The Hallock weeder has largely supplanted other machines in the market and its success with the farmers has been marked if not phenomenal. The testimonials from those who have used it leaves no room to doubt its unquestioned superiority. One of these, writing to the complainants only a few months after the patent was granted, says:

"During the last six years I have used several different makes of weeders with more or less success, but the one which comes very close to the ideal is your Success anti-clog weeder and cultivator. The great trouble with the round-tooth weeder is they readily clog by bunching the teeth together whenever they strike a hard spot, while your style of flat spring-tooth causes them to quickly adjust themselves so as to completely kill all the little weeds. I used it on all spring-planted crops, raspberries, blackberries, etc., and heartily commend it to the farmers in all my Institute lectures. My farm is visited by hundreds. It is the largest private experimental garden, and I do the largest strawberry plant trade of any one in America. Command me if I can serve your grand weeder further."

The testimony of the others is of like import.

The court is unable to concur with counsel in the criticism that the advantages now asserted are afterthoughts not pointed out in the patent. It is thought that any one skilled in the art, after reading the specification in connection with the drawings, would have no difficulty in constructing the machine as it is now placed upon the market. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed.

1177; Klein v. Russell, 19 Wall. 433, 22 L. Ed. 116; Lalance & Grosjean Mfg. Co. v. Habermann Mfg. Co. (C. C.) 53 Fed. 375. The inventors were not called upon to state the exact length and curvature of the tooth or the precise extent of the trail. Had they done so the limitations might have rendered their patent valueless. They describe the tooth as being long enough to enable the frame to pass over the crop and as substantially straight, but with a slight trailing feature. The drawings show the tooth distinctly and accurately. This is enough.

Upon the whole record the court is convinced that the complainants have made a valuable invention. It is not a pioneer invention; it is not a great invention; but they have achieved success where before there was almost total failure and they should not be deprived of the fruits of their improvement. Assume that the Hallock weeder had never been made, is it not manifest that the art would be in a primitive and rudimentary condition and the farmers deprived of a valuable and effective tool? The process of evolution might go on for decades upon the old lines without producing a machine which would do the work. It is often difficult to draw the line between invention and mechanical skill, but when the court has to deal with a machine which for the first time has achieved success after a long line of failures, which accomplishes results never attained before, which is new and useful and in large demand, it is generally safe to assert that the man who made it is an inventor and not a mere mechanic. "It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention." Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. The defendants rely upon the authority of Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, but the decision enunciates no new law upon the question at issue. The patentee in that case "invented no new device; he used it for no new purpose; he applied it to no new machine. All he did was to apply it to a new purpose in a machine where it had not before been used for that purpose." In the present case the patentees have invented a new device, used it for a new purpose and applied it to a new machine. There would be greater analogy between the two situations if the Carlisle tooth could be used in a weeder, but the testimony is clear that it could not be. If the Hallock tooth were found in the prior art upon a rake or a cultivator the defendants' argument might apply, but it is not found there. It was the discovery of a tooth which, for the first time, had imparted to it, when in action, the peculiar vibratory motion needed to do the required work, namely, to operate between, as well as in, the rows, destroying the weeds and saving the plants, which renders the doctrine of the Mast-Foos Case inapplicable. Such motion is not found in the teeth of harrows, rakes or cultivators, and would, if it existed, impair their usefulness. The work of the weeder begins after that of the harrow is completed.

It is thought that the foregoing views are in accord with the decisions of the supreme court in cases presenting similar facts. In the oft-quoted case of Potts v. Creager, 155 U. S. 597, 15 Sup. Ct.

194, 39 L. Ed. 275, the patentee took the cylinder from an old wood-polishing machine, substituted bars of steel for bars of glass, provided it with a revolving roller and used it as a clay disintegrator. The court say:

"Doubtless a patentee is entitled to every use to which his invention is susceptible, whether such use be known or unknown to him; but the person who has taken his device and, by improvements thereon, has adapted it to a different industry, may also draw to himself the quality of an inventor."

In Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294, it was held to be invention to apply a well-known torsional spring to a telegraph key.

In the Barbed-Wire Case, 143 U. S. 275, 12 Sup. Ct. 450, 36 L. Ed. 154, it was held that invention was involved in substituting a wire barb for one cut from an iron plate.

In Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781, invention was found in placing a rubber back upon the packing for stuffing boxes.

In Smith v. Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952, a patent was sustained which covered the substitution of hard rubber for materials previously used as a plate for artificial teeth.

In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, the court found invention in a slight modification of a device shown in a former patent. At page 161, 145 U. S., page 828, 12 Sup. Ct.., and page 661, 36 L. Ed., the court say:

"It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the functions performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

In Hobbs v. Beach (decided March 5, 1901), 21 Sup. Ct. 409, 45 L. Ed. ——, the supreme court say:

"We agree with the courts below that it did involve invention to see that a machine of the Dennis and York type was adaptable to the work of the Beach device, and, second, to make such changes as were necessary to adapt that device to its new function. With all the anticipating devices before us, it is apparent that the mere change in the shape of the dies was a minor part of the work involved in so changing the Dennis and York machine as to make it perform a wholly different function, the invention consisting rather in the idea that such change could be made, than in making the necessary mechanical alterations."

If there be one central controlling purpose deducible from all these decisions, and many more that might be quoted, it is the steadfast determination of the court to protect and reward the man who has done something which has actually advanced the condition of mankind, something by which the work of the world is done better and more expeditiously than it was before. The complainants here have accomplished this result, and, in one aspect, their claim to recognition is stronger than that of the complainants in many of the cases referred to, for the reason, as before stated, that there was not in the art, or in any analogous art, a tooth which could be made to do successful work as a weeder. Some of the earlier teeth resemble the Hallock tooth on paper, but in each and all the necessary characteristics are wanting. It follows that the complainants are entitled to the usual decree.