**BRICK et al. v. A. I. NAMM & SONS, Inc.**

District Court, E. D. New York.   February 3, 1927.

**1. Patents ⌐328—1,553,993, for millinery box, held valid and infringed.**

Delaney patent, No. 1,553,993, September 15, 1925, for a millinery box, *held* valid and infringed.

**2. Patents ⌐26(2)—New combination, producing new useful result, is patentable though all elements were known and used before combination.**

A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were known and in common use before the combination was made.

**3. Patents ⌐72(1)—"Anticipation" may not be found in gathering together distinct prior patents covering single elements in combination.**

"Anticipation" of an invention may not be found in gathering together separate and distinct prior patents covering single elements in a combination, and then arguing that skilled mechanic, from such patents, could have discovered new result or function on which patent in suit was granted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

In Equity.   Patent infringement suit by George H. Brick and another, copartners trading under the firm name of Brick & Gallerstein, against A. I. Namm & Sons, Inc. Decree for plaintiffs.

Decree affirmed 22 F.(2d) 697.   See, also, 21 F.(2d) 179.

Leonard Day, of New York City (Wm. L. Morris, of New York City, of counsel), for plaintiffs.

Lester F. Dittenhoefer, of New York City (Wm. A. Redding, of New York City, of counsel), for defendant.

INCH, District Judge.   This is a suit brought upon letters patent No. 1,553,993 (United States), dated September 15, 1925, to William R. Delaney; application filed May 11, 1923.   The patent covers a millinery box, and was duly assigned to the plaintiffs. The technical defendant is a large department store.   The real defendant is a competitor of plaintiffs in the millinery box trade.

[1] Delaney's patent states that his invention "is to cause a mechanical co-operative functioning between a completely encircling flange provided on a lid and the open top body portion of a box of this construction (cheap material, such as paper board, straw board, and the like) in such a way that, when the lid is hinged to the body portion, an automatic tucking in or seating function of the body portion into the flange of the lid takes place, and also so that, when the lid is closed, the box structure will have imparted to it considerable reinforcing action by the lid." Lines 14 to 25 of page 1 of patent.   He then discusses the previously customary form and in Fig. 4 of the drawings of his patent indicates the then state of the art by a box having heels 6 and 7 disconnected from the continuous rim and requiring the use of the fingers to bend them out in order to close the lid and prevent ruining of the box.   A sample of this type was also offered in evidence.   Plaintiff's Exhibit 5.

There is but one claim in the patent, which is as follows:

"A self-stiffened combination of band-box with a lid comprising an open-top body portion, the walls of which are somewhat resilient and are comprised of paper board, and which walls include a flat rear wall, a bottom wall, and side walls bulging outwardly from said flat rear wall and extending substantially vertically upward from the rim of said bottom wall, and so that the top rim of said rear wall and bulging side walls are continuous one into the other, and are bounded by the same horizontal plane; a lid for said body, also composed of paper board and consisting of a top wall of a configuration corresponding to the outer circumference of said rear and side walls and a continuous flange pendent at right angles from said top wall, and having a flat rear portion to fit against said flat rear wall and a bulging portion to fit about the said bulging portion of said side walls, the depth of said flange and the bulging of said side walls being such that a mutual camming action and a mutual yielding commence with the closing of said lid from a relatively open position, and continue throughout substantially all of the closing action, to effect the automatic seating of all said flange snugly about said side and rear walls in response to a hinged movement of said lid."

It was probably necessary, from a technical viewpoint, to use this rather long and formidable claim, but as a matter of fact the patent covers a very limited patentable function; that is, the lid and sides of the box are so arranged and shaped that the lid automatically assists the tucking in of the upper edge of the bulging sides of the box when the lid is being closed down upon it.   Instead, therefore, of a woman, having the box and its cover separate, or even hinged, being required to adjust the two, and consider-

ing the fragile nature of the box, more often than otherwise, causing its destruction, so far as its future usefulness is concerned, or, as in the state of the prior art shown in Fig. 4 and Exhibit 5, having to remember to insert both hands under the cover and spread the "heels" of the rim in bringing it down, a failure to do which also resulted in the destruction of the usefulness of the box, she can now, with plaintiff's box as indicated by the patent (Plaintiff's Exhibit 1) place her hat in the box and simply close the lid, with the practical assurance that not only will it close correctly, without injury to the box, but it will, when closed, result in a very sturdy and useful container, considering the material from which it is made.

Defendant sets up two defenses. One was invalidity of the patent, and the other is noninfringement. I do not think that there is any need of discussing the question of noninfringement, if the patent is found valid, for the reason that Plaintiff's Exhibit 2 (the article sold by defendant and representing the alleged infringing structure) seems to me, for the purpose of this patent, to be practically the same as that described in the patent. This brings us to the question whether or not the patent to Delaney is valid.

The novel idea claimed by Delaney, as I see it, exists in the fact that he claims to have arranged a combination of old elements in such a way as to produce a new result or function in that he has discovered, and applied commercially, to a millinery box a camming action of two members relatively to each other, whereby there is produced a sort of action known in the art as camming. It is a guiding action, like the guiding action of a cam. Testimony of Harrison.

This so-called action starts back where the lid first touches the top of the body portion of the box, and as the lid is pushed down the contact points move around to the front and disappear as the lid goes down. It is a continuous process. Even where the body of the box is warped or twisted slightly one away from the other, when the cover is pressed down this so-called camming or guiding action causes the cover and box to close on each other, each mutually guiding the other. The depth of the flange and its resilience in the cover, with that of the body portion, causes a reinforcement equally distributing the stresses.

"But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and

when the Patent Office has granted a patent to the successful inventor, the courts should not be ready to adopt a narrow or astute construction, fatal to the grant." Keystone Mfg. Co. v. Adams, 151 U. S. 139, at page 145, 14 S. Ct. 295, 297 (38 L. Ed. 103).

The usual stipulation as to parties, etc., was made a part of the record, and after plaintiff had offered certain proof directed against letters patent No. 1,525,149 (Rappaport), set up as one of the prior art patents, counsel for defendant withdrew same, rendering immaterial any question as to the date of Delaney's invention.

Plaintiff put on the stand a Mr. Whittaker, who testified that for many years he had been acquainted with the millinery box trade and that for the past nine years he had purchased all the supplies, such as hat boxes, for Oppenheim & Collins, a large department store in this city; that his purchases of all kinds of paper boxes totaled a million and a half a year; that he first saw a box like plaintiff's (Plaintiff's Exhibit 6) in 1924; that he purchased one like it from plaintiff, and that he had been purchasing millinery boxes for the past 20 years, but that plaintiff's box was then a new thing on the market; that what appealed to him about the box was "the manner in which the cover went on without pressure"; "it puts itself on without pressure." He also said it was the first box having these features that he had ever heard of. He further testified that he had purchased them from Rappaport (plaintiff's competitor), rather than from plaintiff, because the former offered them cheaper. His testimony evidenced usefulness and commercial success for the patented box.

The inventor, Delaney, also was a witness, and testified as to his experiments with paper boxes of all kinds and descriptions, and his discovery of the idea now covered by his patent. He also states that his box was a new kind of box on the market. There were other witnesses produced by plaintiff along this line, and, while defendant offered testimony for the purpose of contradicting the novelty of the Delaney box, the proof is clear to the effect that it was a new box on the market.

[2] "It must be conceded that a new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made." Hailes v. Van Wormer, 87 U. S. 353, at page 368, 22 L. Ed. 241.

The above case carefully distinguishes between an aggregation and a combination with

a new result, as well as between the latter as the joint product and a result, even new, which is the product, complete in itself, of each or one of the combined elements.

In this invention, it seems to me, we have a new joint product or result. See, also, Deere & Co. v. Rock Island Plow Co. (C. C. A.) 84 F. 171; Western Electric Co. v. North Electric Co. (C. C. A.) 135 F. 79.

There are also present those indications of possible use of the inventive faculty, such as immediate approval by the trade of the new box, its large sale, and its imitation. Hallock v. Davison (C. C.) 107 F. 482, where it is said: "The presumption in favor of the validity of a patent arising from its issuance is reinforced by the facts that the patented machine was the first among many designed for the same purpose to accomplish successfully that purpose, and that it has been copied admittedly by defendants."

Boxes of different material are, of course, old. Attached or detached covers are old. Various expedients resorted to for the purpose of avoiding displacement of the cover and the box sides, by the use of necks or throats, are old. When plaintiff's box came on the market it was new to the trade.

Does this mean that Delaney had discovered something, in the patent sense? To him and his employers it was plainly an important commercial step in that particular art. It would seem strange, if it was purely mechanical, that with such a demand, as evidenced by Whittaker's testimony and the many manufacturers engaged in the business, Delaney's idea should not be found disclosed prior thereto identically or substantially in the United States Patent Office or elsewhere; yet such does not appear to be the case.

This alone would seem to indicate that, while the invention of Delaney was slight, it was nevertheless invention, rather than the doing of something which any ordinary skilled mechanic would think of, as is contended for by defendant. As was said in C. & A. Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275:

"And this is not the less true if, *after the thing has been done*, it appears to the *ordinary mind so simple* as to excite wonder that it was not thought of before. The apparent simplicity of a new device often leads an *inexperienced person* to think that it would have occurred to any one familiar with the subject; but the decisive answer is that, *with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to anyone before*. The practiced eye of an ordinary mechanic may be safely trusted to see what ought to be apparent to every one."

This patent was not obtained by Delaney without some difficulty at the Patent Office, as shown by the file wrapper. Plaintiff's Exhibit 3. There were two rejections during the proceeding. The Kaufmann patent, June 28, 1870, No. 104,853; the Kormanshaus patent, April 27, 1915, No. 1,137,268; and the Morton patent, February 2, 1915, No. 1,127,073—were cited against Delaney. Finally the original and amended claim was canceled, and a new claim, the one now appearing in the patent, was substituted. On this the patent was allowed.

The defendant claims, as I have said, that this was not invention; that it was simply such as any mechanic skilled in the art could and would do. The difficulty is that, while it is undoubtedly true that any skilled box manufacturer can now accomplish this flexing of the side walls of the box, and this automatic tucking in of the said sides (as plaintiff's competitor has plainly been successfully doing), yet it does not seem to me to follow, as I view the many efforts along this line, as indicated by these prior patents, that the multitude of skilled manufacturers had ever thought of such a combination; in other words, Delaney seems to me to have taken a step forward in the art, which, though perhaps slight, nevertheless was a "discovery" in the patent sense. Such discovery should be protected to him by the limited monopoly assured inventors by the patent law.

"Knowledge after the event is always easy, and problems once solved present no difficulties—indeed, may be represented as never having had any—and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention. But the law has other tests of the invention than subtle conjectures of what might have been seen and yet was not. It regards a change as evidence of novelty; the acceptance and utility of change as a further evidence, even as demonstration. * * * In its narrow and humble form it may not excite our wonder, as may the broader or pretentious form, but it has as firm a right to protection." Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, at page 435, 31 S. Ct. 444, 447 (55 L. Ed. 527), affirming decree, Circuit Court of Appeals for the Second Circuit, 162 F. 892.

I do not consider that the cases cited by the counsel for defendant, especially the case

of Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438, set forth a doctrine contrary to the view upon which this present case is decided. I agree with counsel for defendant that the patent is limited, and have considered Delaney's discovery in connection with this limitation as finally allowed by the Patent Office.

[3] Anticipation of an invention may not be found in gathering together separate and distinct prior patents, covering single elements in a combination, and then arguing that, although the new result of a combination discovered does not appear in any such patent, nevertheless a skilled mechanic could easily discover from such patents the said new result or function on which a patent has been granted.

I need not go into the question of equivalents, for the defendant's box is a copy of plaintiff's disclosure. The difficulty experienced by Delaney in the Patent Office, and its result in a patent, should not be lost sight of; nor should the immediate imitation and adoption by a large paper box manufacturer, and successful sales of the new box, be disregarded.

Defendant cites some eleven prior patents showing the prior art. The Rappaport patent, No. 1,525,149, application filed April 10, 1923, dated February 3, 1925, was withdrawn. The Kaufmann patent, No. 104,853, dated June 28, 1870, the Morton patent, No. 1,127,073, dated February 2, 1915, the Kormanshaus patent, No. 1,137,268, dated April 27, 1915, were each cited against Delaney, as already stated, by the Patent Office, with the final result that the patent was allowed.

Peter's patent, No. 550,842, December 3, 1895, relates to such articles as milk cans. The Pitz patent, No. 587,160, dated July 27, 1897, is for an improved construction of a purse. The Seitz patent, No. 779,878, dated January 10, 1905, relates to baskets used on automobiles, particularly in regard to making same water-tight. The Reed patent, No. 979,701, dated December 27, 1910, relates to an improvement in collar boxes, to be made preferably of leather, and of unique form. The Jones patent, No. 1,236,932, dated November 20, 1917, relates to fiber boxes with metal ends for packaging smoking tobacco, cigarettes, and the like; one of its objects being to prevent the tobacco from leaking out from the package. The Reddi patent, No. 1,363,616, dated December 28, 1920, relates to a box or carton specially for containing revolvers, the cover aiding the preventing of the sides of the box being broken by such a heavy article when so contained.

The Leopold patent, No. 1,450,690, dated April 3, 1923, relates to a tea caddy, collapsible, containing an all-around flange making the receptacle substantially dirt and dust proof, and also so constructed that the cover will maintain itself securely in position when closed, and will not tend to spring up out of closed position.

None of the above patents seems to me to disclose or anticipate the idea contained in the Delaney patent as finally issued, within the limitation thereof I have mentioned. This leaves the three patents of Kaufmann, Morton, and Kormanshaus, already several times mentioned herein. The patent to Soloman Kaufmann, No. 104,853, relates to a paper collar box.

Kaufmann claims as his invention this paper collar box, with a mirror inserted in its cover, one side of this box lid being straight or nearly so, so that, when said lid is stood up on its edge, the mirror can be made use of; his idea being that "travelers" are often deprived of the conveniences of home in making their toilet, and a paper collar generally can be put on much better by the aid of a looking glass. This was in 1870, and while such patent might have been useful, and still be useful, I fail to find any idea claimed such as is represented by Delaney in this millinery box.

The patent to Lawrence D. Morton, No. 1,127,073, relates to a means for obtaining a fastening with which the stresses produced in a paper box or carton are adapted, so as to avoid tearing or breaking down the material at any one point. The invention consisted in the insertion of a flexible tape or ribbon, so that, when the package is sealed, the strain will be transmitted to this ribbon, without localizing it on the material forming the cover. Neither of these patents seem to me to anticipate the real invention of Delaney as finally allowed.

The remaining patent to Carl Kormanshaus, No. 1,137,268, relates to containers or pasteboard boxes; the purpose being to provide a box of simple construction, having a hinged lid, capable of having the appearance, although constructed of very cheap material, of boxes usually covered by hand and of more expensive character. In fact, the inventor seems to have copied, pursuant to his invention, the appearance of expensive boxes, and for that reason has provided for a box with a "neck" or "extension" upon which the lid of the box telescopes; the lower edge of the lid being received upon a shoulder. This construction is not Delaney's patent. It does

appear in Defendant's Exhibit B (the leather luggage box), and in Defendant's Exhibit 4.

Consequently I am unable to find anything in the prior art that conflicts with or discloses the idea of the patent finally allowed Delaney by the Patent Office. I decide said patent is valid, and has been infringed by defendant.

Decree in usual form for plaintiffs.