## CONDENSER DEVELOPMENT CORPORATION v. MONTGOMERY WARD & CO.
### No. 7430.

District Court, E. D. New York.
July 23, 1936.

James & Franklin, of New York City (Maxwell James, of New York City, of counsel) for plaintiff.

Blair, Curtis & Dunne, of New York City (A. Trevor Jones, of Chicago, Ill., and E. G. Curtis, and E. F. Dunne, Jr., both of New York City, of counsel), for defendant.

INCH, District Judge.

Plaintiff sues for alleged infringement of a patent granted to Cramer, No. 1,800,-719, April 14, 1931, and also a patent granted to Tompkins, No. 1,932,328, October 24, 1933.

The Cramer patent relates to an electrical condenser and the Tompkins patent relates to a frame construction of such a condenser. Plaintiff sues on claims 4, 11, 17, and 18 of the Cramer patent, which more specifically relates to a ball-bearing construction, and claim 20, which relates to a stator support.

As to the Tompkins patent plaintiff sues on claims 1, 4, and 5.

The above claims are as follows:

Cramer Claims.

"4. An electrical condenser having a frame with end support members, a plurality of groups of stator plates carried by said frame and a rotatable system including a shaft carried by said support members and carrying a plurality of groups of rotor plates corresponding in number to and for cooperation with the groups of stator plates, said end support members having seats formed therein for anti-friction bearing members, said shaft having an annular groove near its drive and to receive and hold said anti-friction bearing members in the seat in the front end support member, said shaft also having its inner end formed into a bearing race to cooperate with the seat in the rear end support plate to receive anti-friction bearing members, means on the rear end support member to hold the shaft and bearing members in working position, a brace plate between at least two groups of stator plates, and an adjustable device carried on said brace plate and engaging a part of the rotatable system for applying a desired amount of friction to said rotatable system."

"11. An electrical condenser having a frame with end support members, a plurality of groups of stator plates carried by said frame, a shaft carrying groups of rotor plates for cooperation with said stator groups, said shaft being supported by said end support members, means for reducing to a minimum frictional resistance between the shaft and said end support members, said means comprising ball-bearing races positioned on said end support members and cooperating races formed in said shaft with balls in said races; a cover plate for at least one of said pair of races to hold the shaft races and balls in working position, and adjustable means for applying a desired amount of friction to said shaft."

"17. For an electrical condenser having; a frame with end support members, a plurality of groups of stator plates carried by said frame, a rotatable system comprising a shaft supported by said end support members and carrying groups of rotor plates for cooperation with said stator groups of plates; means for specially supporting said shaft on said end support members, said special means consisting of, a race-way carried by each end support, and cooperating race-ways in the shaft with anti-friction members in said race-ways,.

and adjustable means for applying to the rotatable system a desired amount of friction.

"18. An electrical tuning device including a frame with end support members, a plurality of groups of stationary tuning members carried by said frame, a movable system comprising a shaft supported by said end support members and carrying groups of tuning elements for cooperation with said stationary tuning elements; means for specially supporting said shaft on said end support members, said special means consisting of, a race-way carried by each end support, and cooperating race-ways in the shaft with anti-friction members in said race-ways, and means for applying to the movable system a desired amount of friction."

"20. A variable condenser including; end support members, frame parts mechanically connected to and between said members and having portions extending upwardly on opposite sides of the condenser and having openings formed therein, supporting tie bars, stator plates secured to said bars, and a single flat strip of insulation connected between each of said bars and said frame parts, said strips of insulation being secured at a single end to said upwardly extending portions of the frame parts and extending into said openings and connected at the other end to said supporting tie bars exposed by said openings."

## Tompkins Patent.

"1. A condenser construction including stator plates, rotor plates interleaved therewith and spaced therefrom, a rotor plate shaft and a non-warping frame for maintaining the spacing between said rotor plates and stator plates, said frame comprising a stamping providing a bottom having an opening and opposed sides folded therefrom and forming with said bottom a channel member, shaft supporting plates secured to said channel member at opposite ends thereof, said rotor plates being carried by said shaft and means carried by the channel member for supporting said stator plates between said opposed folded sides."

"4. A condenser construction including stator plates, rotor plates interleaved therewith and spaced therefrom, a rotor plate shaft and a non-warping frame for maintaining the spacing between said rotor plates and stator plates, said frame comprising a stamping providing a bottom and opposed sides folded therefrom and forming with said bottom an open ended channel member, separate shaft supporting plates secured to said channel member at opposite ends thereof, said rotor plates being carried by said shaft, and means carried by the channel member for supporting said stator plates between said opposed folded sides.

"5. A gang condenser construction including a plurality of separate groups of stator plates, a group of rotor plates interleaved with each group of stator plates and spaced therefrom, a rotor plate shaft, and a non-warping frame for maintaining the spacing between the stator plates of each group and their associated rotor plates, said frame comprising a stamping providing a bottom and opposed sides folded therefrom and forming with said bottom an open ended channel member, said sides having opposite openings therein, means in said openings for mounting the group of stator plates in said channel member, separate rotor shaft supporting end plates closing opposite ends of said channel member, means securing said end plates to said channel member, and spaced shielding partition plates in said channel member secured to said folded sides."

The plaintiff is a holding corporation which owns the above patents together with others in the same art. The defendant is a large department store selling radio sets. These sets include the alleged offending condensers which are manufactured by the Reliance Die & Stamping Company of Chicago. The latter is duly before the court as interested in the defense and is willing to be bound by the decree herein.

The defenses are the usual ones of noninfringement and invalidity. There have been, in other jurisdictions, a number of consent decrees. A number of licenses have been issued.

█ While due weight must be given to such decrees, and to commercial success, they alone are not conclusive. Kay Jewelry Co. v. Gruen National Watch Case Co. (C.C.A.) 40 F.(2d) 600–604.

█ The history of the development of this important part of the radio set is very interesting, but suffice it to say that inventions have resulted in successively accomplishing greater efficiency in a smaller form of condenser, which, in turn, has resulted in cheaper prices for same and other important economies.

Cramer applied for his patent January 15, 1929, and received it on April 14, 1931, No. 1,800,719. In his application the inventor states that his invention relates to an improvement in the detailed construction of electric condensers of the variable type, such as is used in radio receiving sets.

In order to present the problem that Cramer was working on, it may well be said that the field in which he sought his improvement appears to have been a crowded one at the time he started. Very generally speaking the condenser consists of a rotor plate having a relative position to a stator plate. The relative position of these two plates determines the value of the device and it is essential that this position be maintained.

The demand of the industry increased this delicate and important essential by the requirement that various stations be brought in through the tuning of a single dial. This single dial control resulted in a series of condensers arranged so to speak in a single condenser controlled by a single dial. This control operated all of the condenser units simultaneously. Instead therefore of a series of cumbersome and substantially large condensers, the art moved to this multiple or gang condenser device without, however, obviating the necessity for the delicate and accurate tuning in of the various circuits.

Cramer therefore said that the "big problem" was "to get a plurality of condensers operated by common control, set so as to produce the most efficient and maximum result in the tuning of their respective circuits" (lines 22–26, page 1, of patent).

Bearing the above in mind, Cramer found that where other bearings were used for the rotor system it was difficult to get these bearings in perfect alignment, that mechanical stresses in the framework frequently appeared which interfered with proper tuning, and that only a slight shifting of the relative position of a rotor and stator plate or where the multiple condenser was used a shifting in such plates seriously affected the efficiency of the condenser.

Accordingly, Cramer states that the principal object of his invention was to overcome in the construction of a gang condenser these mechanical difficulties. He apparently succeeded in this problem as shown in his application and drawings by the use of ball-bearings thus reducing friction and eliminating side or lateral strain which would tend to displace the rotor plates attached to the shaft from their proper relative position to the stator plates. This shaft of Cramer is somewhat off-center with respect to the center of the rotor plates, and therefore some other additional means was necessary to apply the necessary amount of friction so that the adjusted tuned position would be maintained. This friction was obtained by one or more braces provided in the framework, and the whole device is plainly and carefully set forth in his application and drawings.

I have examined the prior art presented by the defendant, and in my opinion I find nothing therein that could fairly be said to anticipate this discovery of Cramer. To be sure, Cramer's step in advance may be considered slight, but nevertheless it is such a step and has resulted in an improved multiple condenser for which discovery Cramer is entitled to his reward.

In the defendant's condenser there is found the same combination of the ball-bearing support for the rotor system and a means for applying this desired amount of friction. The shaft is also somewhat off-center as in Cramer. The friction applying members are in the form of forked springs. The essential principle and advantages of Cramer appear in defendant's device. In my opinion it therefore infringes. However, defendants claim that the Cramer patent is not a valid one, and they refer to several prior patents such as the French 567,673, Meisselbach, 595,110, and Schoettler 1,554,298.

The French patent could not be said to disclose to the skilled mechanic the discovery of Cramer. In the first place, it is a single unit condenser and material changes would have to be made before it could be used in a gang condenser. There is no construction whereby the rotor shaft is held in proper alignment and the balls held in proper position and it lacks means for the necessary friction. There are other serious differences.

The Meisselbach patent relates to a fishing reel. Of course, ball bearings are old, but to compare the problem of Meisselbach in the use of ball bearings for a free running fishing reel to the necessary delicate relationship between a group of rotor plates and stator plates in a receiving set is too big a jump. Likewise there are

differences which could not be said to have anticipated the invention of Cramer. The same may be said of Schoettler which relates to ball-bearing skates.

The validity of Cramer's patent should not be destroyed by such references. Brick v. A. I. Namm & Sons (D.C.) 22 F.(2d) 693–696; Allied Metal Stamping Co. v. Standard Electric E. Corp. (D.C.) 57 F.(2d) 296–302.

█ A different situation exists as to Cramer's claim 20, and this will be discussed as a part of the consideration of plaintiff's Tompkins patent.

The Tompkins patent was applied for February 14, 1929, and granted October 24, 1933.

Tompkins' alleged invention relates to frame constructions for mounting variable electrical condensers. Tompkins states that "it is an object of the invention to provide a frame substantially free from strains and stresses which would tend to alter relative positions of the parts and produce warping, thereby changing the capacity of the condenser." In other words, Tompkins claims to have invented a new frame for these multiple or gang condensers.

In my opinion, Tompkins was too late and was anticipated in 1926, several years before, by Chamberlain with his Ansonia-Mohawk condenser (Defendant's Exhibit E).

These Mohawk condensers are substantially a complete anticipation. The invention was applied for in July, 1924, and patents were granted to Chamberlain, the inventor, No. 1,573,374 issued February 16, 1926, and No. 1,666,163 issued April 17, 1928; the latter being a division.

Cramer seems to have adopted this Chamberlain idea, and therefore his claim 20 relates to Chamberlain rather than to Tompkins. To be sure, plaintiff claims that this use of Chamberlain by Cramer was new and represented a novel combination, but in my opinion it produced no new result, and Cramer cannot avail himself of the rights of Chamberlain if the latter's patent is valid (on which it is unnecessary to pass in this suit) by using it in a manner intended by Chamberlain that it should be used.

Accordingly, in my opinion, claim 20 of the Cramer patent and the claims of the Tompkins patent are invalid because of anticipation and it is unnecessary to therefore consider whether they have been infringed.

While this is not a suit for unfair competition and defendants argue that it is deemed advisable for manufacturers to make condensers that may be interchangeable, nevertheless a fair inference from the record before me is that defendants have not been concerned so much with patent rights as with the making of money by sale of condensers, and radio sets containing them, for which a demand was present.

Plaintiff is entitled to the usual decree with costs as to the claims 4, 11, 17, and 18 of Cramer, and the complaint is dismissed without costs as to claim 20 of Cramer and 1, 4, and 5 of the Tompkins patent.