**CONDENSER DEVELOPMENT CORP. v. DAVEGA–CITY RADIO, Inc.**

**No. 67.**

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1939.

James & Franklin, of New York City (Maxwell James, of New York City, of counsel), for plaintiff-appellee.

Ward, Crosby & Neal, of New York City (Charles W. Owen, of Toledo, Ohio, and Joshua Ward, of New York City, of counsel), for defendant-appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, the owner of Patent No. 1,800,719 granted April 14, 1931 to Stanley S. Cramer for an electrical condenser on his application filed January 15, 1929, is a company holding patents under which it grants licenses. The nominal defendant is a distributor of radio receiving sets in the Southern District of New York who has there sold such sets which included certain variable condensers which the plaintiff contends infringed claims 4, 10, 11, 17 and 18 of the above patent. These condensers were made by The American Steel Package Company which is defending the suit and is to be bound by the final decree. All of the claims were held valid and infringed and the defendant has appealed.

The patent in suit relates to a variable condenser of the kind commonly used to tune a radio receiving set to pick up the broadcasts from various sending stations as desired within the range of the set. It is usually of the multiple type known as the gang condenser and its maximum efficiency is attained only when each unit of the condenser may be adjusted to the maximum point of the resonance curve by turning a shaft which carries all the rotors and holding the shaft in the attained position throughout the reception period. Many variable gang condensers that could be so tuned and would effectively stay tuned were on the market before Cramer applied for the patent in suit. He disclosed nothing new in respect to the electrical features of a variable gang condenser. What he did was to use what is claimed to have been a new kind of ball bearing for the rotor shaft bearings and the combination of such bearings with the old variable gang condenser is the combination covered by all the claims in suit.

In order to understand the problem which Cramer undertook to solve, it is necessary to have in mind the general nature of a variable condenser. A variable gang condenser is only what is in effect two or more variable condensers which may be tuned at the same time but which are nevertheless separate units from the standpoint of their electrical functions in the receiving set. This feature is brought about by mounting the rotors of each condenser on the same shaft; placing each set of stator plates in position to co-operate with the rotor plates for that set; and shielding each unit made up of a set of rotors and stators from each other such set to make each sufficiently immune from disturbance by electrical currents outside what may be called its own compartment. The rotor shaft and the stator plates are all carried by the same frame and, as these are air condensers whose capacity is comparatively small, it is essential to satisfactory operation that the fixed distance between the rotor plates and the stator plates be kept constant throughout the turning range of the rotors in order that the tuning characteristics of each condenser unit may be maintained. It was found difficult to make a frame which would provide such nearly perfect alignment for the front and rear ends of the rotor shaft that the shaft would not bind when placed in position and set up stresses in the frame which brought about a change in the tuning characteristics of the condenser as the rotor shaft turned the rotor plates in the tuning operation. This binding also caused excessive wear and did not permit the shaft to turn with even smoothness. When sufficient care was taken to get the required alignment, the cost of construction was comparatively high. Attempts to overcome the trouble had been made and substantial success had been attained by the use of a cone type of bearing which did allow the shaft to adjust itself somewhat to the posi-

tion it was required to assume when placed in a frame in which the holes made for the bearings were not properly aligned.

The step which Cramer took to create the combination covered by the claims in suit was to mount the rotor shaft on ball bearings of what is called a new and special type whereby the measure of self adjustment permitted was great enough to enable a rotor shaft to be inserted in a frame carrying bearing mountings as much out of alignment as they would be in the ordinary process of manufacture and yet not bind. In this way less carefully made frames could be used; the rotor shaft could be inserted in them easier; and a good variable gang condenser could be made more cheaply. The condensers were also made smaller without lessening the capacity, a desirable feature, though it is not easy to tell how much, if any, of the compactness may be justly attributed to what Cramer did and that is immaterial in view of the result we have reached. The condenser manufacturers soon adopted the Cramer type of bearing and we are given to understand that all but the defendant have taken licenses under the patent, the validity of which was upheld in Condenser Development Corporation v. Montgomery Ward & Company, D.C., 20 F. Supp. 600.

In determining the validity of the claims in suit sight must not be lost of the admitted fact that all Cramer did in respect to the operation of a variable condenser was to use ball bearings which made alignment sure and easy. Sufficient care in the construction of the frame would have created, and would now create, as good alignment as can be obtained with Cramer's bearings and with that the condenser would perform just the same with other bearings as with Cramer's. Even the use of ball bearings in such condensers was old as is shown by the French Patent No. 567,673 granted in 1923 and by a so-called National condenser introduced in evidence as Exhibit F. One result of the use of ball bearings by Cramer which has not been mentioned was the unwanted one of a lessening of friction. That, of course, made the condenser more liable to get out of its tuned position and Cramer compensated for that in the obvious way by adding friction elsewhere to the rotor shaft and thus supplying whatever stability at rest the shaft needed and which was not obtained when the ball bearings were tightened after they had been put in place. It is not denied that however much Cramer improved a variable gang condenser, his work was confined to the one item of its bearings and that item narrowed to what is claimed to be a special type of bearing of the general kind old in use in the art, i. e., ball bearings.

Cramer's ball bearing had a raceway for the balls inserted in the frame but instead of having one placed over the shaft as was often done a raceway was made integral with the shaft by simply making in it a groove of the desired size. The holes in the frame were made enough larger than the diameter of the shaft to allow for whatever play was needed to let the shaft come to rest without binding in the bearings at the front and the back of the frame and then the bearings were merely tightened to hold it in place. The previous looseness of the balls in the raceways so made allowed the shaft to assume a position in them with as much absence of binding and resulting distorting pressure on the frame as though the bearing holes in the frame had been in perfect alignment.

This type of raceway construction for the balls in a bearing by making a groove in the shaft was not itself new. The Meisselbachs had it in the pivot ball bearing for fishing reels for which they were granted Patent No. 595,110 on December 7, 1897. So did Sutton in Patent No. 693,459 granted to him on February 18, 1902. And the use of ball bearings on a condenser shaft without any raceway on the shaft but what was provided by the shaft itself is shown in the French Patent No. 634,148 granted to Merlo.

From this the defendant has been able forcibly to argue that Cramer disclosed no invention because all he did was to substitute one old type of bearing for another on the shaft of a variable condenser. That would not, indeed, amount to invention. Fisher Governor Co. v. C. F. Camp Co., 10 Cir., 40 F.2d 341. Nor do we think it makes any difference that Cramer made the substitution not for the more usual purpose for which ball bearings are used, to reduce friction, but for perhaps the less common one to permit the shaft they carry to adjust itself in them to prevent binding. The two things somewhat overlap anyway as the elimination of binding would inevitably reduce friction and in any event it was but taking advantage of another use for an old bearing and not the invention of anything both new and useful.

There is, however, another reason why the claims in suit are all invalid.

They are all combination claims which cover an old variable condenser in combination with what are at most but improved bearings for its shaft. Those bearings do nothing, after the condenser has been assembled, but allow the shaft to turn in them and to hold it so that it will continue to turn in them in the same way repeatedly. That is just what the old bearings, including the old ball bearings, did for a condenser when they were installed in proper alignment. So assuming for the moment that Cramer's bearings were a new and improved type of ball bearing, they performed no new function in the combination of themselves with the old condenser as claimed. However much they may have contributed to the quick and easy assembling of the condenser, when that was once assembled their novelty had completely served its purpose and nothing was left but an old condenser which performed in the old way with Cramer's bearings doing what the shaft bearings of such a condenser had always done and doing that *no differently.* Such an improvement of one part of an old combination cannot be claimed in combination with the old parts where the combination so claimed is otherwise unchanged in the way it performs or in what it accomplishes. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Mfg. Co. v. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; McGrath Holding Corp. v. Anzell, 2 Cir., 58 F.2d 205. All the claims in suit must, therefore, be held invalid.

Decree reversed with directions to dismiss the bill.