## ISAACS v. SUSSMAN.

### (District Court, E. D. New York.   September 4, 1916.)

**1. PATENTS ⚖=328—VALIDITY AND INFRINGEMENT—FABRIC-FOLDING MACHINE.**
  The Isaacs and Pellar patent, No. 819,548, for a fabric-folding machine which automatically adapts itself to the height of the pile of goods when successively folded, *held* valid and infringed by the device made under the Sussman patent, No. 1,102,555, for an improved machine.
  [Ed. Note.—For other cases, see Patents, Dec. Dig. ⚖=328.]

**2. PATENTS ⚖=157(2)—CONSTRUCTION OF CLAIMS—AMBIGUITY.**
  A claim of a patent, although ambiguous, should, if possible, be so construed as to give it a valid meaning, rather than one which would make it purposeless.
  [Ed. Note.—For other cases, see Patents, Cent. Dig. § 231; Dec. Dig. ⚖=157(2).]

In Equity.   Suit by Moses Isaacs, doing business as the Shuttle Machine Company, against Charles Sussman, doing business as the Simplex Fabric-Laying Machine Company.   On final hearing.   Decree for complainant.

Munn & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for plaintiff.
Thomas A. Hill, of New York City, for defendant.

CHATFIELD, District Judge.   Suit for infringement of patent No. 819,548, granted May 1, 1906, to Isaacs and Pellar, on application filed June 3, 1905.

[1] The plaintiff is joint patentee with one Pellar of a device for superimposing successive folds of cloth, of any desired length, upon a cutting table.   The testimony shows that Isaacs has some business arrangement, in the nature of a license, from his copatentee, and is entitled to maintain the action as sole plaintiff.   It appears, also, that Isaacs, upon a suggestion from his copatentee, worked out with him a machine of this character, while actually engaged in the cutting of garments.   They made a rough experimental model, and then left to a pattern maker the various mechanical devices and gears which were necessary to transmit the motions and forces which they had indicated in the model.   The plaintiff furnished the money, and although the testimony is such that, as between Isaacs and Pellar, some question might have been raised as to which was entitled to be called the inventor, and as to how far Isaacs was able to assert the facts necessary to qualify as inventor upon a patent application, there is nothing in the record which is sufficient ground for an alleged infringer to question the patentee's rights; that is, there is no clear evidence that Isaacs' share in the joint invention was not exactly what he states it to have been.

The defendant's machine performs substantially the same work and in exactly the same way as that of the patent in suit.   Some 9 years after the issuance of the patent in suit, the defendant made an application (February 3, 1914) for a patent for this machine, and the patent was issued to him July 7, 1914, under No. 1,102,555.

The issuing of the patent to the defendant by the Patent Office is. prima facie evidence of patentable invention, but in the absence of the file wrapper, or of any testimony other than that shown by the patents and the machines, it is impossible to ascertain the history of proceedings in the Patent Office. Presumptively, the application is exactly in the language and equivalent to the specifications and claims as allowed. If the defendant's device is an infringement of the plaintiff's patent, assuming that the plaintiff's patent is valid, then the defendant's patent could be presumptively valid only as an *improvement,* and the plaintiff would still be entitled to an injunction. If the defendant's device is not an infringement, then it would follow that the defendant has a patentable combination, without reference to the plaintiff's claims.

The patents offered as anticipations, or as a part of the prior art, to limit the plaintiff's claims, are few in number. The earliest of these, to Spalding, was issued August 28, 1841, and was for a machine to fold and measure cloth as produced in a loom or mill. It should be borne in mind, as recognized by Spalding, that the folding of cloth, back and forth, would give exact lengths to each fold, and this could be taken advantage of in counting the number of lengths, and hence obtaining the measurement. But a device to accomplish this result would require comparatively small horizontal movement, as each fold or length would be only that of the standard of measurement. This is shown also by Wadsworth, No. 592,264, of October 26, 1897. When the object desired was to fold the cloth in long pieces, upon an extended table, for the purpose of cutting, then the necessity of making the pieces exactly alike in size, of registering the edges and ends accurately, and of locating the fold at such a point as to save as much waste at the end of each piece as possible, would be accomplished by such a machine as that planned by Spalding, but the horizontal movement of the folding mechanism could not be extended to any length of cutting table which might be necessary. Also, when the cutting of cloth for garments was concerned, other obvious difficulties arose, which are fully explained in the patents to Warth, No. 137,041, issued March 18, 1873, on a specification dated January 13, 1873, and No. 137,518, issued April 1, 1873, on an application filed March 21, 1873.

This patentee (Warth) states that, if two layers of cloth are formed by laying back one length upon itself, then the nap of the second layer would run up one leg of a pair of pantaloons and down the other, if the fabric should be cut with one pattern placed upon the top of the pile. This inventor also points out that, in order to form the two sides of the pair of pantaloons from one cutting, the two layers of cloth just referred to must be so placed that the one side or face of the cloth will be opposed to the same face upon the next fold, in order that one leg of the pantaloons shall not be inside out, when the two pieces are placed in position in a garment. Warth accomplished this by turning over the cloth in his carrier, at the end of each fold, when this was necessary, or by turning around the carrier, so as to reverse the sides, at the end of each fold, if that was necessary.

It thus appears from these old patents that the idea of a machine for folding, measuring, and placing strips of cloth in a pile, in such

shape as to economically allow them to be used for cutting all of the folds with one application of the pattern, was open to the use of any one.

The plaintiff patented a machine which did not cut off successive strips or folds, like the Warth devices, or Couzineau, No. 604,605, of May 24, 1898. But he was seeking to construct a machine which, like those shown in the English patent, No. 2,792, of 1869, to Worrall and Kershaw, and to Cox, No. 573,448, December 22, 1896, would fold back and forth a continuous strip, upon a long table, with a de·vice for holding the ends of the long strips as each was laid down, and for raising or adjusting the parts to meet the increasing height of a pile.

The Spalding, Wadsworth, Cox and Warth patents all show the idea of carrying the fold of cloth under a spring or clamp resting upon the extreme end of the fold. In such patents as Cox and Warth, these springs or clamps were to be put in place and adjusted by hand. In Spalding, the whole of the work was within reach of the operator, and whatever adjustment was necessary was apparently accomplished by hand.

The Isaacs and Pellar patent arranged a traveling folder or spreader, with wedge-shaped bars or rulers, hung upon rock shafts, which would by appropriate gears be gradually raised as the pile increased, and which would be capable of equipment with a tabulator, as in the Spalding and Wadsworth patents. Upon the approach of the carriage to the end of the fold, a bar (maintained so as to rock or tilt upon a horizontal axis, placed at the proper position as desired, and having teeth or needles upon the under side to catch and hold the·fold of cloth) contacts with an iron arm, which swings, out of the way, that spreader which is not in contact with the fabric, and then by another bar is itself tilted sufficient to allow the second spreader, which is in contact with the cloth, to pass under the edge of this bar which carries the needles or points. Contact with another stop then terminates the course of the machine, and the reversal of motion allows the bar with the teeth to fall, from the force of gravity, and to hold the strip last laid upon the top of the pile.

The plaintiff did not provide for the turning or the cutting of the strips, as the work for which his machine was designed does not seem to involve the difficulties presented by the pantaloon making of Warth, and upon reaching the opposite end of the˙table, exactly the reverse motion to that just described would be had. Thus, within the limits of the powers of adjustment of this machine, a pile of any desired height of cloth could be accurately formed, and with any length to each fold in the pile.

The defendant pursues exactly the same plan to accomplish exactly the same result, so far as his general purposes and results are concerned. He has, however, this difference in the arrangement of the device to hold the end of each fold. He forms the bar, which carries the needles or teeth upon its under side, out of two plates, each car·ried by a set of arms rotating upon the same horizontal shaft. A latch holds these two bars together until the carriage passes. Then

pressure against the tilting arm raises both bars and allows the presser or spreader bar to pass beneath, with the folded cloth. At this point contact with an arm adjusted in a position to accomplish this purpose trips the latch and allows the lower of the two plates forming the toothed bar to fall upon the fold of the cloth, but upon the upper side of the spreader bar, which has not yet been withdrawn. Spaces or openings in the upper side of this bar are left to give room for the teeth of this toothed bar. Then the carrier, striking a block and being reversed, withdraws the spreader bar, and the process is reversed at the other end of the fold.

The plaintiff has claims which are general in language, and claims infringement of Nos. 1 and 2, 5 and 6, 11 and 12. Claims 1, 5, and 11 are as follows, and present the issue in question:

"1. In a fabric-folding machine, a table, a carriage movable along the table, carrier bars supported by the carriage, and means for automatically shifting the carrier bars upward."

"5. In a fabric-folding machine, a table, a carriage movable on the table, fabric-clamping devices at the ends of the table and mounted to swing vertically, carrier bars mounted on the carriage, and devices on the carrier bars for swinging the clamping plates upward."

"11. In a fabric-folding machine, a table, fabric-clamping devices mounted to swing at the ends of the table, a carriage movable on the table, carrier bars mounted to swing on the carriage, devices on the carrier bars for swinging the said clamping plates upward, a table on the carriage for supporting the fabric, and a guide roller at the under side of said table supported by the carriage over which the fabric passes to the carrier bars."

[2] It is contended by the defendant that the words "automatically shifting the carrier bars upward," in claim 1, refer to the possible rocking of the presser bar, and that this idea was old in the art. The plaintiff contends, however, that claim 1 refers to the idea of adjusting the spreader or presser bar so as to correspond with the height of the pile.

While this claim may be ambiguous, it should, if it is capable of construction establishing some valid meaning, be so interpreted, as distinguished from a meaning which would make the claim ambiguous and purposeless. It should be assumed, therefore, that the Patent Office in allowing the claim had the plaintiff's construction in mind.

It will be seen that the defendant is plainly an infringer, even though the defendant's patent may be valid as an improvement. If the plaintiff is entitled to a broad enough construction of the claims to give them the general meaning indicated, in other words, if the plaintiff was the inventor of the idea of a traveling carrier which could automatically adapt itself to the height of the pile of cloth, and at the same time automatically carry the folds under some fastening device, which should automatically be made to seize the end of the folds when the machine was reversed, these claims are not only valid, but can be read upon the defendant's structure.

The English patent has the idea of the traveling carrier and an adjustable mechanism for laying the folds at each end of the pile, but it is entirely different in principle from a carrier which will lay a pile of folds of any length, by a spreader or ruler, and which shall automatically insert each fold under a bar which acts as a holder.

None of the patents in the record contain any such idea. The plaintiff's device is a combination of the old Spalding idea, of forming the fold, with the carrier of Warth, and the addition of the automatic adjustment, as well as the automatic trip of the holding bar. at each end of the fold.

Claim 1 is valid only as a cloth-spreading machine, as distinguished from a folding machine; that is, it necessarily involves the traveling carrier. But, with this limitation, the claims of the patent would seem to be valid. The defendant, starting 8 or 9 years after the plaintiff, and building a machine for the identical purpose, and making use of mechanically identical devices, cannot ask that the court declare to have been obvious to Isaacs and Pellar, 8 years before, what was obvious to him with their patent before him.

While the defendant's patent shows certain novelties or improvements upon the plaintiff's machine, it is not the duty of the court to recognize those improvements, nor the patentability of the improvements, as a defense, in the form of an attack upon the accomplishment of the earlier inventor in constructing the machine which has been improved.

The claims of the plaintiff can be read upon the defendant's machine. The claims of the defendant's patent could not be read, in all details, upon the plaintiff's machine. But this is essentially true of any improvement patent. That which would be an anticipation, if earlier in date, must be held an infringement, if later in date, even though it contains additional details or changes, which show some patentable advance, by way of a combination, which is only an improvement. Where the original patentable combination covers, as an entirety, the idea involved in the combination, and where the equivalents do no more than perform the functions of the parts of the original combination, as claimed in the original patent, then, if that patent be valid, the new combination is still an infringement, and its improved parts are but equivalents of the parts of the original patent. During the life of that original patent, the idea of the combination is the property of the original inventor, and no one has a right to improve upon some step, and to claim the right to a patent upon the whole combination, or whole idea (with the improvement included), unless he can successfully attack the idea of the combination itself, or show that the improved device is not covered by the patent for the combination as issued to the original inventor.

In the present case the absence of the file wrapper and the brevity of the record leave much to be drawn as conclusion from the paper patents and the models. But both sides are bound by such inferences as can properly be drawn from the record as it stands, and upon this record the plaintiff's patent would seem to be valid. The claims involved in this action are broad enough to cover the defendant's machine, and this machine should be held to be an infringement, even though the defendant's patent be also held valid, as showing patentable invention in certain details, the use of which may be limited by the plaintiff's rights.

The plaintiff may have a decree.