### ALLIED METAL STAMPING CO., Inc., v. STANDARD ELECTRIC EQUIPMENT CORPORATION.

#### No. 5584.

District Court, E. D. New York.

March 21, 1932.

See, also, 53 F.(2d) 646.

Darby & Darby, of New York City (Walter A. Darby and Sidney E. Gottschall, both of New York City, and George P. Kimmel, of Washington, D. C., of counsel), for plaintiff.

Albert T. Scharps, of New York City, for defendant.

CAMPBELL, District Judge.

This is an action in equity in which the plaintiff seeks relief against the defendant by injunction and damages for the alleged infringement of patent No. 1,611,499, issued by the United States Patent Office to Herman F. Vaughn and Raymond R. Terpening, for electrical installation assemblage and conductor clamp, granted December 21, 1926, which patent was thereafter duly assigned to the plaintiff, which is the lawful owner thereof.

Defendant has interposed an answer setting up the defenses of invalidity and noninfringement, and also a counterclaim, which defense of counterclaim was dismissed on motion prior to the trial, and that decision is binding on this court.

The plaintiff is a corporation organized under the laws of the state of New Jersey.

The defendant is a corporation organized under the laws of the state of Delaware.

The problem which the patentees were called upon to solve and the objects of their invention are clearly set forth in the specification of the patent in suit, as follows:

"In electrical construction work, when clamping conductors to switch boxes, outlet boxes, and other receptacles, it is customary to pass said conductors through relatively large openings in the receptacle and secure them by means of a screw-operated clamp within the receptacle. The form of clamp heretofore employed leaves gaps between the conductors and the edge walls of the openings through which they pass, which gaps are contrary to regulations covering electrical installation, and constitute a dangerous fire hazard. It is the principal object of our invention to provide a new and improved electrical installation assemblage including a clamp which is so constructed as to close the gaps of the openings, heretofore left by the form of clamp previously employed.

"Another object of the invention is to provide a clamp which will not only effectively close the portion of the knockout hole not occupied by the conductor armor, but which may be used to effectively grip and hold any of the several sizes of flexible metallic armored cables, as well as the non-metallic sheathed cables and the flexible tubings now in use.

"Other objects are to provide a combined cable clamp and knockout hole closure of almost universal application to the standard switch and outlet boxes, which may be manufactured at small cost, which may be easily and quickly installed, and which will be strong and highly effective in use."

There was evidence received on the trial that fires had been caused by sparks from the switch boxes escaping through the openings left in the boxes where the conductor cables entered the box. The patent in suit is simple and easily understandable, and the embodiment shown in the patent and drawings comprises a receptacle 5, which may be of the type of any well-known cabinet, switch box-

es, outlet boxes, or other inclosures or receptacles commonly used in electric installation. which receives a clamping screw 13, slidably engaged by threading or the like, with an

Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

tion. This receptacle is formed with the usual continuous walled openings or knockout holes 6, through which the conductors 7 and their protecting armor 8 pass, and in which they are held by the clamping member 9. This clamping member comprises two arched clamping portions 10, to engage the armors 8 of the conductors 7. The arched clamping portions 10 are integrally connected by a connecting portion 11, having an opening 12;

opening in the wall of the receptacle which is at right angles to the wall in which the knockout holes 6 are formed.

The clamping member 9 is disposed adjacent to the inner side of one wall of the receptacle 5, and its inner edge, in the clamping portion 10, is preferably provided with inwardly stamped lugs 14, to anti-slippingly engage the armors 8, of the conductors 7. The outer edge of the clamping member 9 is

provided with an integral plate 15, in a plane at right angles to that of the connecting portion 11; the plate 15 being adapted to slidably engage the inner side of the receptacle wall.

The portions 10, 11, and 15 strengthen each other and provide a strong clamp with the use of the minimum amount of metal; and the bearing of the stamping portions 10 on the cables is sufficient to prevent the tilting of the plate 15 away from the wall of the receptacle when the screw 13 is tightened; thus the plate 15 covers the gaps which would otherwise exist between the conductor armors and the edges of the opening 6, and the fire hazard is reduced.

The defendant's contention that the patent in suit is invalid, because the disclosure thereof is misleading and incorrect as to the operation and function of the clamp and clamp plate 15, is not sustained.

The clamp of the patent does function and perform in exactly the manner described in the specification, and the description and drawing are not misleading or incorrect as to its operation.

The drawings and specifications of the patent in suit describe and show a clamp which will accomplish the expressed objects of the patent in suit. The clamp of the patent in suit functions to grip and hold the several sizes of cable mentioned in the patent, and in the manner described, and the upstanding plate 15 of the clamp also closes the gaps or openings between the conductors and the edge walls of the openings through which the conductors pass.

I do not understand how the clamp, when screwed down on the conductor to grip the same, moves forwardly and inwardly so that the plate thereof moves slightly away from the inside box wall, in view of the fact that the rigid screw 13 does not pass through a slot in the clamp but through a hole accommodated thereto, and that such translation would be impossible without bending the screw; but, even if the upstanding plate be so moved, it is immaterial, as, whatever position it ultimately assumes, it will still remain a closure for the holes.

Whether plate 15 be called a baffle, plate, or closure is immaterial, as it effectively functions to block off or close the holes against sparks passing therethrough, when the clamp is screwed down in clamping position.

In determining the meaning of the word "close" as used in the patent in suit, it must be considered with reference to the objects of the patent. Liquid Carbonic Co. v. Gilchrist (C. C. A.) 253 F. 54; Imperial Machine & Foundry Corp. v. American Machinery Co. (D. C.) 276 F. 436.

The objects of the patent in suit are attainable by the structure disclosed in the patent in suit, and that structure may be satisfactorily made and used by any person skilled in the art.

The defendant's contention that the patent in suit is invalid because the disclosure thereof does not show an operative device, when used with the flexible armored cable illustrated to form a closure of the character described and claimed, requires but little further consideration in view of what I have already said on the question of apertures.

However, even if the plate 15 may or may not be positioned slightly away from the wall of the box, when the flexible cable is clamped down, does not deprive it of the function of serving to close the apertures where they are unoccupied by the conductors.

The contention of the defendant that the patent is void because the patentees added material new matter to their specification, during the prosecution thereof in the Patent Office, without filing a supplemental oath, is not sustained.

The first specification was brief and concise and completely disclosed the invention, and to any one skilled in the art would have taught all that the patent now teaches.

All of the amendments which were allowed were clearly within the scope of the original specification, and the original specification and drawings support the claims finally made, and no supplemental oath was required. Michigan Cent. R. Co. v. Consolidated Car Heating Co. (C. C. A.) 67 F. 121; Westinghouse E. & Mfg. Co. v. Metropolitan E. Mfg. Co. (C. C. A.) 290 F. 661.

The further contention of the defendant that the patent in suit is invalid, in that there is omitted therefrom an essential and material part, namely, the brass ferrule which is shown in the drawing at Fig. 3, but is unmarked and not described, is not sustained.

The use of the brass ferrule is not necessary to practice the invention, as the patented structure would be operative without it.

By following the specification as it reads, without addition or subtraction, a person skilled in the art could make and use the invention, and this is what the law requires.

The omission to mention the unnecessary ferrule in the specification, even though it might be indicated in the drawing, is not a fatal defect. Curtis on Patents, § 248; Sewall v. Jones, 91 U. S. 171, 185, 186, 23 L. Ed. 275; Robinson on Patents, vol. 2, § 491.

▆ Defendant offered in evidence fifteen United States patents, eleven of which are relied upon as anticipations of the patent in suit, and four to show the art. The defendant offered no testimony concerning these patents, but I will briefly review the same.

No. 700,340, to Hubert Krantz, for electrical outlet box, granted May 20, 1902. The patent in suit was issued over this patent, which was cited by the Patent Office. This patent could not be substituted for the patent in suit.

In Krantz, the side wall is cut away, and, when the conductors are introduced in the passage C, the clamp B and plate a' are fitted in place. If the conductors are the exact size or smaller than the passage C, the plate a' exactly fills the cutaway of the side wall. If the conductors are larger than the passage C, the plate a' will not exactly fill the cutaway of the side wall, but there will be open spaces between the plate a' and the side of the cutaway.

Under no conditions does the plate á of Krantz ever function in the same manner as the plate 15 of the patent in suit, which is adapted to slidably engage the inner side of the receptacle wall and not to form part of the side wall of the box, as in Krantz.

There may or may not be a clamping action in Krantz, depending on the size of the armored cable. In the patent in suit, and in defendant's structure, there is always a clamping action.

No. 805,968, to Edwin T. Greenfield, for junction box, granted November 28, 1905. This patent was also cited as a reference in the Patent Office, and the patent in suit issued over it.

Aside from being rather expensive and impracticable from a mechanical standpoint, because of the difficulty that a mechanic would experience if, in order to install a simple new cable, he was required to hold three or four cables entering the box from different directions, while fastening two screws to secure all of four cables in the box at one time, the clamp is not provided with arched flange ends between which arches a screw may be passed; there is no upstanding plate adapted to slidably engage the inner side of the receptacle wall; the rounded

clamp cannot be used, nor is it obvious how it could be adapted to be used with a standard square or rectangular box; and the clamped portion as shown does not seat on the conductor over any appreciable length thereof.

No. 855,550, to William R. Atkinson, for electric switch box, granted June 4, 1907. This patent was likewise cited as a reference in the Patent Office.

The plate b of this patent is itself the wall when it is in clamping position, and is not adapted to slidably engage the inner side of the receptacle wall, as does plate 15 of the patent in suit.

There is no "relatively long and narrow flange" in this patent as in the patent in suit, having arched ends for gripping the cable; on the contrary, the edge of the plate which contacts with the cable is relatively thin, and, while not highly efficient or effective in so far as clamping goes, it might be used with armored cable; but with fabric covered wires the thin metal edge contact would have a shearing action and a tendency to cut through the fabric, rendering it unsafe and impracticable.

No clamp having an upstanding flange for co-operating with knockout holes is contemplated in this patent.

No. 956,674, to William A. Bonnell, assignor to Hattie W. F. Bonnell, for switch or outlet box, granted May 3, 1910.

This patent was not cited in the Patent Office. In the embodiment of the invention shown in Figs. 1 to 4, inclusive, there are conduit receiving openings in the walls of the box, and the knockout discs 13 normally close the conduit receiving openings 14. When it is desired to pass the conduit into a receiving opening, the disc may be readily punched and broken off. The clamp has no plate for contacting slidably with the inner wall of the receptacle so as to close off the hole, nor is there any aperture closing means at all. Therefore, the most essential feature of the patent in suit is not found in Bonnell, and this patent fails as an anticipation.

No. 1,016,030, to Granville E. Palmer, assignor to the Hart Manufacturing Company, for wall case, granted January 30, 1912. The patent in suit issued over the citation of this patent in the Patent Office. The clamp structure of this patent is entirely different from the structure of the patent in suit. In this patent the arched flange of considerable area, of the patent in suit, is not employed for contacting with the cables,

to hold them in place, but, instead thereof, it uses an edge contact, the construction of which is such that there would be a constant downward shear or pull of the clamps against the cable, and, if used with a "loom cable" results in cutting through and coming in contact with the respective wires, and creates a short circuit.

While it may be argued from Fig. 6 of the drawing of this patent that to a certain extent, at least, the structure shown aimed at closing the portion of the box conductor aperture not closed by the armored cable, such closing was attempted in an entirely different manner from that of the patent in suit, in that there is not found in this patent the upstanding plate 15 of the clamping member 9, of the patent in suit, adapted to slidably engage the inner side of the receptacle wall or its equivalent.

■ This patent, if later, would not infringe, as the claims of the patent in suit would not read upon it, and therefore, being earlier, it does not anticipate.

No. 1,161,150, to Otto Moessner, for combined bushing and clamp for electric cables, granted November 23, 1915. This patent was not cited in the Patent Office. In so far as securing the cable within the box is concerned, the clamp of this patent may accomplish everything accomplished by the patent in suit, but it does not close off the space between the periphery of the cable receiving aperture and the cable itself.

There is not found in this patent the upstanding plate 15 of the clamping member 9 of the patent in suit, adapted to slidably engage the inner side of the receptacle wall, or its equivalent.

No. 1,448,367, to George C. Thomas, Jr., assignor to the Thomas & Betts Co., for fitting for electrical conduits, cables, and the like, granted March 13, 1923. This patent was not cited in the Patent Office.

I assume this patent was cited because of the flat clamping member disclosed in Figs. 1 and 2, one of the simplest and most generally used forms of clamp prior to the time when the invention of the patent in suit was placed on the market. It represented the step in the art immediately preceding the introduction of that of the patent in suit, and, while it was simple in construction and use, economical to manufacture, and served the purpose of clamping the cable within the box, it did not have the upstanding plate 15 of the patent in suit, nor any equivalent, nor was it adapted to close the portion of the cable receiving aperture not occupied by the cable.

No. 1,543,576, to Homer G. Knoderer, assignor to General Electric Company, for outlet box, granted June 23, 1925. This patent was not cited in the Patent Office, nor do I see any reason for citing it here as an anticipation.

In this patent the cable is held directly in the center of the aperture by the Knoderer clamp. Of course, if the cable should exactly fit the box aperture, then the aperture would be closed, but, if larger or smaller, the space unoccupied by the cable would not be closed by the clamp, and there is not shown in this patent any upstanding plate forming part of the clamping member, adapted to slidably engage the inner side of the receptacle wall.

No. 1,638,510, to Clarence Renshaw, deceased, by his executrix, assignor to National Metal Molding Company, granted August 9, 1927. In this patent there is an edge contact of the clamping member with the cable, and, while this might not be objectionable with an armored cable, it would be a fatal defect with a "loom cable," as the edge, when tightened down, would cut through the soft protection of a loom cable and contact with the wires, causing a short circuit.

■ No. 1,778,151, to William B. Greene, deceased, by his administratrix, assignor to the Adapti Company, granted October 14, 1930. Strictly speaking, this patent cannot be used for the purpose of anticipation, but only to show that the patentees of the patent in suit were not the first and original inventors of the subject-matter disclosed, because, although this patent was applied for before the application was filed for the patent in suit, and the date of invention of the patent in suit was not carried back of that, this patent was not issued until about four years after the issuance of the patent in suit. Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651.

The defendant did not, in its answer, set up this defense, and leave to amend by setting it up at the opening of the case was denied. I will not, however, dispose of this patent as a reference on such technical grounds, but will consider it as though it was properly alleged as a defense.

The box of this patent is merely an outlet box, adapted to hang fixtures from a ceiling, and could not be used as a switch box such as disclosed by the patent in suit. The inner face of the plate 19 serves only as an

abutment for the armored portion of the cable, to protect against the sharp outer edge of the free end of the cable armor, and does not serve the function of closing the unoccupied portion of the aperture through the box, as does plate 15 of the patent in suit.

The cable apertures in this patent are provided in a plate which forms part of one wall of the box when that plate is seated within the notch formed in the side of the box, and with which said plate is adapted to register. There is not shown in this patent any upstanding plate, adapted to slidably engage the inner side of the receptacle, as is shown in the patent in suit.

As shown in Fig. 17 of this patent, the clamp with a flange and a plate are so formed as to defeat the object of the patent in suit. The plate in this patent is formed with openings, while in the patent in suit the plate is adapted to close the openings in the box, and the box itself in this patent is of an entirely different construction from the receptacle of the patent in suit. Referring to Fig. 18 of this patent, the portion 50 constitutes part of the wall of the box, and the depending flange or skirt portion 48 does not slidably engage the inner side of the receptacle wall to close conductor openings.

It is unnecessary to speculate as to how the clamp of this patent might be reconstructed so as to, in any manner, approach that of the patent in suit, as any such reconstruction, even if possible, would prevent the use of this patent as an anticipation.

No. 805,968, to Edwin T. Greenfield, for junction box for electrical conductors, granted December 12, 1905. While the clamping ring of this patent might accomplish the same function as the clamp of the patent in suit, it would accomplish it in an entirely different way. There is not found in the patent the arched flanged clamp, having a hole between the arches, or an upstanding flange adapted to slidably engage the inner side of the receptacle wall.

■ Identity of result does not anticipate, if the device or means by which the result is obtained is different. Hubbell v. United States, 179 U. S. 77, 86, 21 S. Ct. 24, 45 L. Ed. 95; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; Ingersoll v. Delaware & Hudson Co. (C. C. A.) 37 F.(2d) 465.

■ Anticipation cannot be evidenced by combining the elements of several different patents, and no patent alleged as an anticipation shows all the elements of the combination of the patent in suit.

None of the patents offered in evidence anticipate the patent in suit, and that patent shows invention and not merely mechanical skill.

The evidence offered on behalf of the defendant to show the efforts he made furnishes proof that there was a problem to be solved which required more than mechanical skill for its solution, and its utilization of the invention of the patent in suit, to the exclusion of the prior art, is very persuasive evidence of its estimate of the invention of the patent in suit, and may well have weight with us.

The defendant offered in evidence four United States patents, not for anticipation, but merely to show the state of the art, namely, No. 904,320, to Edward J. Dustman, for switch box, granted November 17, 1908; No. 1,032,058, to Henry R. Gilson, assignor to National Metal Molding Company, for junction box, granted July 9, 1912; No. 1,450,-972, to Lewis H. Church and George C. Thomas, Jr., assignors to the Thomas & Betts Company, for outlet box, granted April 10, 1923; and No. 1,687,750, to John C. Boyton, for conduit clamp, granted October 16, 1928. Whatever limitation may be imposed on the construction of the claims of the patent in suit thereby, none of these patents or those offered to show anticipation so limit the construction of the claims of the patent in suit as to prevent their being construed in their limited and literal sense as covering a structure which embodies the features of novelty illustrated and described in the patent in suit.

The patent is not a great one, but it is meritorious and practical, and has given to the art an economical and useful structure which has met with success. The patent is valid.

This brings us to the question of infringement.

■ Plaintiff bases this action upon claims 1 and 2 of the patent in suit, which read as follows:

"1. An electrical installation assemblage comprising an electrical receptacle having two walls at an angle to each other, one of said walls having two openings to receive conductors while the other of said walls is formed with a screw receiving opening whose axis is between the axes of said conductor receiving openings, a plate contacting slid-

ably with the inner side of said one wall and having an edge disposed at the edge portions of said conductor receiving openings remote from said other wall, said plate being provided with a lateral relatively long and narrow flange along said edge projecting into the receptacle in spaced relation with said other wall, said flange being provided with arched ends to engage the conductors and having a screw receiving opening between said arched ends and near said plate, this opening being aligned with the aforesaid screw receiving opening, and a headed screw passing through said screw receiving opening and having its head contacting with the flange, said screw being threaded into the screw receiving opening of said other wall and when tightened serving to draw the aforesaid plate and its flange rectilinearly toward said other wall to clamp the conductors in place, said plate then serving to close portions of the conductor receiving openings remote from said other wall.

"2. Conductor clamping means for a receptacle having in one of its walls two apertures to receive conductors, said clamping means comprising a plate having a lateral relatively long and narrow flange at an edge thereof, said flange being provided with arched ends and having an opening between said arched ends; whereby upon disposal of the clamping means in a receptacle with the aforesaid plate contacting with the apertured receptacle wall, a screw may be passed through said opening to secure the arched ends of the flange against conductors passing through the wall apertures, said plate then serving to close portions of the apertures unoccupied by the conductors."

Plaintiff attempted to show infringement by defendant by the manufacture and sale of two different types of clamps, namely, Exhibit 3 and Exhibit 4, but was unable to prove that defendant manufactured and sold Exhibit 3, and withdrew Exhibit 3 from further consideration by this court, and therefore the bill of complaint may be dismissed as to Exhibit 3, but not on the merits, and without costs.

This leaves for consideration in the instant suit only Exhibit 4.

The defendant's structure Exhibit 4 is provided with holes adapted to receive the conductors, which holes are covered normally by a metal disc, which may be knocked out or pried out when the installation is made.

Two clamping members are arranged in the defendant's structure adjacent the end walls. These clamping members are constructed with two arched clamping portions, which are adapted to contact with and engage the upper surface or conductors inserted through the apertures in the end of the box. The arched portions of the clamp are integrally connected with each other by a connecting portion, having an opening therein, the said opening being adapted to receive a clamping screw, which screws into a threaded hole in the bottom of the box.

The clamping member's outer edge which fits against the inner wall of the box adjacent the aperture is formed with an upstanding plate portion, which plate is positioned at right angles to that of the arched clamping portions and their connecting portion, and is so shaped that the plate's outer face will abut against the inner wall of the box and slide against the same.

There is a clamping screw received by the opening in the connecting portion of the clamping members, which screw engages with a hole in the bottom of the receptacle.

The screw when screwed down secures the clamping member with respect to the conductors inserted through the apertures in the box.

When the clamping member is screwed down on a conductor inserted in the box, the upstanding plate portion will function so as to close whatever opening remains in the cable receiving hole, and the arched clamping portions will function so as to bear down upon the conductors and effectively grip and clamp the same in the box.

The clamp is effective for use in clamping and holding different sized conductors and at the same time closing any gap left in the openings in the box through which the different sized conductors pass.

There are present in the defendant's structure additional features designed to perform additional functions, which will be hereinafter discussed.

The defendant contends that there are distinctions in structure, function, and operation between its structure and the patent in suit which relieve it from infringement, and these I will briefly consider.

The ferrules to which the defendant refers are not described in the specifications or called for in the claims of the patent in suit. They were in common use in the art for the purpose of protecting the wires that come out of the armor from the jagged sharp edges of the armor.

The most that can be said for the front wall of the defendant's clamp is that it is an

improvement, as its presence in no way changes the structure of the patent in suit, or its manner of operation.

The upwardly extending back wall of the defendant's structure has the function of plate 15 of the patent in suit, to close the openings and not merely to support the teeth.

Not only would it be possible in defendant's structure to support the teeth by the clamp itself, but by screwing down the defendant's clamp, on the conductor, the upstanding plate portion of the defendant's clamp functions to close the holes in the box. Further, the contention that such plate does not function to close the holes is at variance with the specification of the Rosenfield patent, No. 1,760,663, offered in evidence by the defendant, and which is supposed to cover the defendant's structure, and says:

"Another modification of the invention is shown in Figs. 7 and 8. Here the device 210 has the top wall portion 210$^b$ formed with a pair of arched sections 210$^c$ for accommodating two cables. Said sections are interconnected by a section 210$^f$ having the opening 214 through which the fastening screw 15, extends. The rear wall 210$^c$ instead of extending down as in the device 10, extends outwardly from the top wall portion 210$^b$. Said wall 210$^c$ thus may be positioned against the inner side 11$^b$ of the box so as to form a closure for the spaces 16 between the cables and the rim portions of the box openings 13. (P. 2, lines 28 to 41.)"

The fact that the defendant's clamp is available for use on conductors of different sizes, but within a limited range, and will at the same time close the holes in the box, does not relieve from infringement, as it simply means that the efficiency of the defendant's clamp in this respect is impaired by added features of construction. Mitchell v. Ewart Mfg. Co. (C. C. A.) 81 F. 390; Penfield v. Chambers Bros. Co. (C. C. A.) 92 F. 630; King Ax Co. v. Hubbard (C. C. A.) 97 F. 795.

The defendant's contention as to the tilting of the defendant's clamp 23, when pressure is applied, and the benefit received thereby, does not seem to me to be of moment on the question of infringement.

The defendant's clamp is so closely positioned with reference to the wall of the box, by the clamping screw, that the said plate has a sliding contact with the wall. Any tilting that there might be would be so slight, and the movement of the lower portion of the upstanding back plate away from the wall of such minute magnitude, that it would not affect the practical operation of the closing of the knockout hole by the rectilinear or up and down movement of the clamps which would, even if there was added thereto a slight tilting movement, cause the upstanding plate to effectively close off the holes in the box.

That the discs in the defendant's structure may be pried out, while in the patent in suit they are knocked out, is immaterial, in so far as the claims of the patent in suit are concerned, as they call for a clamping means for a receptacle, having in one of its walls two apertures to receive conductors, and do not specify how the holes are to be produced.

The defendant's structure has the same elements, performing the same functions in substantially the same way as the patent in suit.

The added advantages, if any, of the defendant's structure over that of the patent in suit, even if patentable, do not justify the use of the patented combination by the defendant. Isaacs v. Sussman (D. C.) 235 F. 403, 407; Cimiotti Unhairing Co. v. American Unhairing Mach. Co. (C. C. A.) 115 F. 498; Thomson-Houston Elec. Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712.

The claims in issue of the patent in suit read literally on the defendant's structure, and, while there are some distinctions, there are no real differences in structure or function, between the defendant's structure and the patent in suit.

The defendant infringes claims 1 and 2 of the patent in suit.

I cannot find, on the evidence, that notice was given to the defendant before the commencement of the suit, nor that the plaintiff has properly marked its patented clamps, as required by section 4900 of the Revised Statutes (35 USCA § 49); plaintiff may, nevertheless, be decreed injunctive relief and an accounting of infringement committed by defendant after notice given by the filing of the bill. Maimen v. Union Special Mach. Co. (C. C. A.) 165 F. 440; Gibson v. American Graphophone Co. (C. C. A.) 234 F. 633; Westinghouse Elec. & Mfg. Co. v. Condit Elec. Mfg. Co. (C. C.) 159 F. 154; Crier v. Innes (C. C. A.) 170 F. 324; Son v. Pressed Steel Car Co. (D. C.) 21 F.(2d) 528.

A decree may be entered in favor of the plaintiff against the defendant for an in-

junction and accounting in accordance with this opinion, with costs and the usual order of reference.

Settle decree on notice.

Submit findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the equity rules (28 USCA § 723) and the rules of this court.